IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DESINEY DEON CARTER, #192639, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:14-CV-1182-WC |
| | ) |
| | ) |
| DR. PEASANT, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

In this 42 U.S.C. § 1983 action, Desiney Deon Carter ("Carter"), a state inmate, challenges the adequacy of medical treatment provided to him for itchy skin, which he self-diagnosed as scabies, during his incarceration at the Ventress Correctional Facility ("Ventress"). Carter names Dr. Peasant, former correctional commissioner Kim Thomas, the State of Alabama, Warden Christopher Gordy and Nurse Walker as defendants in this cause of action.

The defendants filed a special report and supporting evidentiary materials addressing Carter's claim for relief. In these documents, the defendants adamantly deny that they acted with deliberate indifference to Carter's skin condition, a condition diagnosed by Dr. Peasant as merely dry skin, and, instead, assert that they provided appropriate treatment for his minor skin irritation. *Defendants' Exhibit 3 - Doc. No. 12-3* at 3. The defendants further assert that the complaint is due to be dismissed because Carter failed to exhaust an administrative

remedy available to him through contract medical provider, Corizon Medical Services, Inc. ("Corizon"), prior to initiation of this case. *Defendants' Special Report - Doc. No. 12* at 6-7. The defendants base their exhaustion defense on Carter's failure to file a grievance regarding the medical treatment challenged in the instant complaint as allowed by Corizon's grievance procedure before seeking relief from this court. *Id*. at 7.

"[A]n exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (internal quotations omitted); *Trias v. Fla. Dep't of Corr.*, 587 F. App'x 531, 534 (11th Cir. 2014) (District court properly construed defendant's "motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies"). The court will therefore treat the defendants' report as a motion to dismiss. *Bryant*, 530 F.3d at 1375; *Order of February 5, 2015 - Doc. No. 14* (advising Carter that the defendants' report will be treated as a dispositive motion and explaining the manner in which to respond to such a motion).

## II. STANDARD OF REVIEW

The Eleventh Circuit has determined that

> the question of exhaustion under the PLRA [is] a "threshold matter" that [federal courts must] address before considering the merits of the case. *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004). Because exhaustion is mandated by the statute, [a court has] no discretion to waive this requirement. *Alexander v. Hawk*, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

*Myles v. Miami-Dade Cnty. Corr. and Rehab. Dep't*, 476 F. App'x 364, 366 (11th Cir. 2012).

Based on the foregoing, the court will "resolve this issue first." *Id.*

> When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. "If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (citing *Bryant*, 530 F.3d at 1373-74). If the complaint is not subject to dismissal at this step, then the court should make "specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (citing *Bryant*, 530 F.3d at 1373-74, 1376).

*Myles*, 476 F. App'x at 366. Consequently, a district court

> may resolve disputed factual issues where necessary to the disposition of a motion to dismiss for failure to exhaust [without a hearing]. *See* [*Turner*, 541 F.3d at 1082]. The judge properly may consider facts outside of the pleadings [i.e., evidentiary materials submitted in support of the special report] to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record. *Bryant*, 530 F.3d at 1376.

*Trias*, 587 F. App'x at 535.

Upon review of the undisputed facts of this case as evidenced by the evidentiary materials filed by the defendants, the court concludes that the defendants' motion to dismiss is due to be granted.

### III. DISCUSSION

Carter challenges the constitutionality of medical treatment he received for a minor skin condition. In response to the complaint, the defendants deny Carter's allegations and further argue that this case is subject to dismissal because Carter failed to properly exhaust the administrative remedy supplied via the medical care provider prior to filing this

complaint as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

The Prison Litigation Reform Act compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998); *Woodford v. Ngo*, 548 U.S. 81 (2006). Moreover, "the PLRA exhaustion requirement requires ***proper exhaustion***." *Woodford*, 548 U.S. at 93 (emphasis added).

> Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings. . . . Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage.

548 U.S. at 90-91, 93. The Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement . . . by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him. 548 U.S. at 83-84; *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA). "***The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint***." *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012) (per curiam) (emphasis added).

The record in this case is undisputed that the health care provider for the Alabama Department of Corrections provides a grievance procedure for inmate complaints related to the provision of medical treatment. The defendants explain the procedure and relevant facts as follows:

> . . . [Upon his arrival at Ventress in February of 2014,] Mr. Carter signed an "ACCESS TO HEALTHCARE SERVICES" form, acknowledging his understanding of the grievance, pill and sick call processes as well as the manner in which he accesse[s] health care. . . .
> . . . The initial orientation process with the ADOC correctional system includes educating inmates as to the availability of the grievance process. The existence of this grievance procedure is well-known among the prison population, as indicated by the fact that the medical staff at Ventress receives inmate requests and/or inmate grievances on a daily basis. The physicians,

nurse practitioners, nurses and other medical personnel at Ventress attempt to resolve all inmate concerns prior to an "inmate grievance" being submitted.

     The grievance process is initiated when an inmate submits an informal Inmate Grievance form to the HSA through the institutional mail system. After reviewing the Inmate Grievance, the HSA [or her designee] then provides a written response [to the grievance] within approximately five (5) days of receipt of the Inmate Grievance. The written response to an Inmate Grievance is included on the bottom portion of the same form containing an inmate's Inmate Grievance. Below the portion of the form designated for the "Response," the following notation appears:

> IF YOU WISH TO APPEAL THIS REVIEW YOU MAY REQUEST A <u>GRIEVANCE APPEAL</u> FORM FROM THE HEALTH SERVICES ADMINISTRATOR. RETURN THE COMPLETED FORM TO THE ATTENTION OF THE HEALTH SERVICE ADMINISTRATOR. YOU MAY PLACE THE FORM IN THE SICK CALL REQUEST BOX OR GIVE IT TO THE SEGREGATION SICK CALL NURSE ON ROUNDS.

As stated in the Inmate Grievance forms, the second step of the grievance process involves the submission of a formal Grievance Appeal, at which time the inmate may be brought in for one-on-one communication with the medical staff, Health Services Administrator and/or the Director of Nursing. A written response to a formal Grievance Appeal is provided within approximately five (5) days of receipt. Inmate Grievance and Grievance Appeal forms are available from the correctional shift commander office at Ventress. Inmates are instructed to place completed Inmate Grievance and Inmate Grievance Appeal forms in the sick call boxes located [in the facility]. The HSA reviews the Grievances daily, provides a written response within approximately five (5) days at the bottom of the form and returns a copy of the completed forms to the inmate. The HSA encourages inmates who have complaints about the medical care they have sought or received at Ventress to utilize this grievance process. **Mr. Carter did not submit a single grievance [prior to initiation of this case] during his incarceration at Ventress**.

     . . . Upon examining Mr. Cater [on October 27, 2014] and asking about the nature of his complaints and the prior treatment received, I concluded that Mr. Cater did not, in fact, have scabies. Moreover, it appeared to me that his complaints of skin irritation were not life-threatening or associated with any particular medical condition, but were likely the result of simply dry skin.

> Therefore, I encouraged Mr. Carter to continue to rely upon the existing treatment regimen provided to him, which included antihistamine medication and a topical hydrocortisone cream. I also told Mr. Carter that, if his symptoms should change . . . in any way, that he should notify the medical staff.

*Defendants' Exhibit 1 (Aff. of Courtney Walker, R.N.) - Doc. No. 12-1* at 2, 5-7 (citations to medial records and paragraph numbering omitted).

Upon review of the arguments set forth by the defendants, the court entered an order which provided Carter an opportunity to file a response to the arguments set forth by the defendants in which he was advised to "specifically address the defendants' assertion[] that . . . [h]is claims are due to be dismissed because he failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ('PLRA')" prior to filing this federal civil action. *Order of February 5, 2015 - Doc. No. 14* at 1. The time allowed Carter to file his response expired on February 26, 2015. As of the present date, Carter has filed no response to this order.

The evidentiary materials filed by the defendants demonstrate that Carter failed to file the requisite grievance prior to initiation of this federal civil action. Carter does not dispute his failure to exhaust the administrative remedy available to him in the prison system prior to filing this case. In addition, there is nothing before the court which justifies Carter's failure to exhaust the grievance procedure provided by Corizon. Consequently, the court concludes that this case is subject to dismissal without prejudice as Carter failed to properly exhaust an administrative remedy available to him which is a precondition to proceeding in

this court on such claim. *Woodford*, 548 U.S. at 87-94; *Bryant*, 530 F.3d at 1374-75 (dismissal for failure to exhaust an administrative remedy when the remedy remains available is not an adjudication of the merits and is without prejudice).

### IV.  CONCLUSION

For the foregoing reasons, it is ORDERED and ADJUDGED that:

1. The defendants' motion to dismiss is GRANTED to the extent the defendants seek dismissal of this case due to the plaintiff's failure to properly exhaust an administrative remedy available to him prior to filing this federal civil action.

2. This case is DISMISSED without prejudice in accordance with the provisions of 42 U.S.C. § 1997e(a) for the plaintiff's failure to properly exhaust an administrative remedy available to him in the Alabama prison system.

A separate judgment will issue.

Done this 29th day of April, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE